UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FRANK MASTERANA, | 98-CR-47E |
| Petitioner, | 05-CV-0561E |
| –vs- | MEMORANDUM |
| | and |
| UNITED STATES OF AMERICA, | ORDER[1] |
| Respondent. | |

---

## INTRODUCTION

On August 9, 2005, Petitioner Frank Masterana filed the instant petition pursuant to 28 U.S.C. §2255 seeking to set aside, vacate or correct his sentence. On August 17, 2005 the government filed a motion to dismiss the petition. For the reasons stated herein, the petition will be denied.

## BACKGROUND

In April 1998, Petitioner was charged in a five-count Indictment with various gambling offenses and with engaging in foreign travel and use of telephone facilities in order to facilitate such gambling offenses, in violation of, *inter alia*, 18 U.S.C. §§371, 1084, 1952 and 1955. On February 28, 2001 Petitioner executed a plea agreement and pled guilty to Count 1 of the Indictment, specifically:

> "a violation of Title 18, United States Code, Section 371, conspiracy to violate sections of the United States Code that relate to illegal gambling, namely (a) 18 U.S.C. §1955 (conducting, financing,

---

[1] This decision may be cited in whole or in any part.

>managing, supervising, directing and owning an unlawful bookmaking business that was in substantially continuous operation for a period in excess of thirty (30) days, and had a gross revenue in excess of $2000 on various days during this period, and was conducted, financed, managed supervised, directed and owned by five or more persons, and was operated in violation of Article 225 of the New York Penal Law; (b) 18 U.S.C. §1952 (using facilities in interstate and foreign commerce with intent to distribute the proceeds of, and to otherwise promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of a bookmaking business enterprise carried on in violation of Article 225 of the New York Penal Law, and to thereafter perform and attempt to perform acts to promote, manage, establish, and carry on, and to facilitate the promotion, management, and carrying on of the bookmaking business) and (c) 18 U.S.C. §1084 (while being in the business of betting and wagering, using an interstate and foreign wire communication facility to transmit in foreign commerce bets and wagers on sporting events and contests and communications which entitled the recipients to receive money and credit as a result of these bets and wagers)."

Plea Agreement ¶1. On March 4, 2005, this Court sentenced Petitioner to twelve months of imprisonment and three years of supervised release. Petitioner took no appeal from either his conviction or his sentence.

In this petition, Petitioner asserts that his sentence violates his rights guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution because he did not have access to the Pre-Sentence Report ("PSR") wherein Petitioner was referred to as an "organizer and leader" and which recommended an increase in Petitioner's offense level under the United States Sentencing Guidelines ("USSG" or "Guidelines") based on that role and because

he was promised that, in exchange for his plea of guilty and cooperation with the government, he would not be sentenced to any period of imprisonment. Petitioner contends that, as such promise was the only reason he entered a guilty plea, his sentence should be vacated.[2]

## DISCUSSION

As part of his plea agreement, Petitioner waived his right to appeal or collaterally attack his sentence, provided such sentence fell within or below a stipulated Guidelines range. Specifically, paragraph 24 of the plea agreement provided:

> "The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal, modify pursuant to Title 18, United States Code, Section 3582(c)(2) and collaterally attack any sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section II, above, notwithstanding the fact that the Court may reach the sentence by a Guidelines analysis different from that set forth in this agreement."

---

[2] At oral argument, Petitioner's counsel presented the claim somewhat differently. Rather than argue that Petitioner's sentence was somehow Constitutionally defective, counsel asserted that, in light of Petitioner's age, his need to provide for his wife and children, and the fact that he had already served eight (8) months in prison at the time of the argument all demonstrated that, as a matter of fairness and "extraordinary circumstances" the Court should "terminate" Petitioner's sentence. Counsel argued that this could be accomplished by the Court's vacating the original sentence it imposed and re-sentencing Petitioner to a lesser sentence.

Plea Agreement ¶24. Petitioner's Guideline range was specified in Section II, paragraph 11 of the plea agreement:

> "It is the understanding of the government and the defendant that, with a total offense level of 13 and criminal history category of V, the defendant's sentencing range would be a term of imprisonment of 30 to 37 months, a fine of $4,000 to $40,000, and a period of supervised release of 2 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in paragraph 1 of this agreement."

Plea Agreement ¶11.

As stated above, the Court sentenced Petitioner to twelve months of incarceration and three years of supervised release.[3] Because Petitioner's sentence is below the stipulated guideline range, Petitioner explicitly waived any right he may have had to collaterally attack his sentence by means of a §2255 petition. *See Garcia-Santos* v. *United States*, 273 F.3d 506, 509 (2d Cir. 2001); *Mercedes* v. *United States*, 2002 WL 1974050, at *2 (S.D.N.Y. 2002). Even in the absence of this explicit waiver, Petitioner is likewise precluded from collaterally attacking his sentence by his waiver of the right to appeal it. *United States* v. *Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995).

---

[3] Such sentence was possible because the Court granted the government's motion for a downward departure pursuant to Guidelines §5K1.1. The Court granted an 8-level departure, which resulted in a reduction of Petitioner's offense level from 13 to 5. Based on the 2000 Sentencing Guidelines, with an offense level of 5 and a criminal history category of V, Peititioner's Guidelines range was 6 months to 12 months of incarceration. With a criminal history category of VI, Petitioner's Guidelines range was 9 months to 15 months of incarceration.

Nevertheless, the Court has reviewed the transcript and its own notes of Petitioner's plea colloquy and finds that all requirements of Due Process were satisfied and that Petitioner's waiver was knowing and voluntary. At the plea proceeding the Court reviewed the written plea agreement with Petitioner. Petitioner agreed with and admitted to the factual basis for the charge to which he pled guilty. *See* Plea Transcript at 2-6. He also indicated that he understood that his sentence would be determined in accordance with the Sentencing Guidelines. *Id*. at 8-12. The Court ensured that Petitioner understood that he had a right to have a jury determine whether or not he was guilty of the crime charged and that his guilt would have to be proved beyond a reasonable doubt. Petitioner further acknowledged that by pleading guilty to the charge, he was waiving his right to have his case determined by a jury and was waiving the right to appeal a conviction. *Id*. at 13-15.

To permit Petitioner to collaterally attack his plea under §2255 would be to condone an obvious circumvention of the plea agreement wherein Petitioner bargained away his right to appeal or collaterally attack his sentence. Such cannot be permitted. As the Second Circuit Court of Appeals has stated, "[t]he government, [the] court, the public, *and* criminal defendants have legitimate interests in the integrity of the plea bargaining process and the finality of the sentences thus imposed." *Pipitone*, supra at 39 (citations omitted). It is well

settled that "the waiver provision is a very important part of the [plea] agreement — the Government's motivating purpose, decreased effort and expense of protracted litigation, is not well-met if the defendant is permitted to appeal that to which he has agreed." *United States* v. *Rosa*, 123 F.3d 94, 97 (2d Cir. 1997).

Notwithstanding the fact that Petitioner waived his right to appeal or collaterally attack his sentence, the Court has reviewed Petitioner's claims of error and finds them without merit. Petitioner contends that (1) the PSR upon which the Court based Petitioner's sentence contained a factual error in concluding that Petitioner played the role of an organizer or leader in the offense of conviction and — had he had access to the PSR — he would have challenged that factual statement; (2) the sentence was imposed in contravention of Petitioner's agreement with the government and the Probation Office that he would not be sentenced to imprisonment; and (3) at the sentencing proceeding, the Court failed to verbalize the supervised release portion of Petitioner's sentence.

Petitioner was represented by counsel during the criminal case and is represented on this petition by the same attorney. During Petitioner's plea proceeding, the Court indicated that a PSR would be prepared and that Petitioner would have the opportunity to review the PSR, to discuss with the Probation Officer anything in the PSR with which he disagreed and would have the opportunity to raise any objection to the PSR to the Court. *See* Plea Transcript at

12. The PSR is addressed to the Court, to the Assistant United States Attorney and to Petitioner's counsel. The Court received no communication from Petitioner or his counsel indicating that the PSR had not been received or that they were denied access to the PSR. Importantly, the affidavit of Petitioner's counsel in support of this petition does not confirm Petitioner's allegations regarding access to the PSR. Counsel's affidavit contains no assertion that he did not or was not able to review the PSR. While the docket sheet reveals that Petitioner did not file a statement with regard to sentencing factors, there is no factual support for Petitioner's bald claim that he was denied access to the PSR.

Additionally, Petitioner was on notice that his offense level could be increased in light of his role in the offense because, in the plea agreement, the government took the position that the increase should apply. Paragraph 7 of the plea agreement states:

> "It is the government's position that the defendant was an organizer and leader of a criminal activity that involved more than five (5) participants, and for this reason, his offense level should be increased by four (4) levels pursuant to Guidelines §3B1.1(a)."

Plea Agreement ¶7. Because Petitioner failed to notify the Court of either his purported lack of access to the PSR or his objection to the conclusion that his offense level should be increased by four levels for his leadership role in the

offense, the Court was unaware that Petitioner challenged the factual conclusion that he played a leadership role in the offense.

Furthermore, after Petitioner's plea proceeding, but prior to his sentencing, the government made a motion for a downward departure recommending that Petitioner's offense level be reduced from 13 to 5 — a reduction of 8 offense levels — pursuant to Guidelines §5K1.1 in recognition of Petitioner's substantial assistance to the government. Such motion confirmed the original offense level calculation contained in the plea agreement and the PSR — including the 4 level increase for role in the offense under Guidelines §3B1.1 — resulting in an offense level of 13 prior to the Guidelines §5K1.1 motion. Even now, other than his disagreement with the characterization of his role, Petitioner has offered no facts which, had they had been offered at the time of sentencing, would have raised an issue as to whether the Guidelines §3B1.1 adjustment was proper, would have necessitated a sentencing hearing or would have altered the Court's Guidelines calculation in any way.

Moreover, even if the Court were to credit Petitioner's assertion that he lacked access to the PSR, the finding that Petitioner played a leadership role in the instant offense and the concomitant increase in his offense level pursuant to Guidelines §3B1.1 is amply supported by the facts which formed the basis for

Petitioner's plea of guilty and to which he agreed in his plea agreement and at his plea proceeding. Paragraph 5 of the plea agreement states:

> "The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:
>> On an unknown date, but sometime prior to February 1, 1996, defendant FRANK MASTERANA set up a bookmaking operation in the Dominican Republic. In doing so, the defendant obtained "line services" and hired as many as ten individuals whose identities are unknown to work as clerks. Thereafter, MASTERANA solicited individuals he knew to be involved with bookmaking in the Western District of New York, including co-defendant Paul Kaczowski, to have their customers bet with him (MASTERANA) using an 800 number. Under this arrangement, MASTERANA and Kaczowski also agreed to share revenues from this business. *\*\**."

Plea Agreement ¶5. Petitioner in no way suggests that these admitted facts are actually untrue. Such admitted facts are sufficient to justify the conclusion that Petitioner played a leadership role in criminal activity involving more than five persons and therefore the enhancement of Petitioner's offense level by four levels pursuant to Guidelines §3B1.1 was appropriate.

Next, Petitioner argues that the government promised that, if he pled guilty and cooperated with the government, Petitioner would not be sentenced to imprisonment. In support of his claim, Petitioner points to paragraph 12 of the PSR which states that Petitioner believed that — as his bookmaking business was

legal in the Dominican Republic — he was operating within the confines of the law and was only entering his plea of guilty because he was "too tired to fight any longer and [could not] take the chance of going to jail." *See* PSR ¶12, p.6. Petitioner also notes that, in a letter to the Community Corrections Office requesting a specific correctional institution assignment on Petitioner's behalf, the Assistant United States Attorney indicated that the one-year sentence imposed on Petitioner "came as a bit of a surprise$_{***}$." *See* Exhibit V to Petition.

Nothing provided by Petitioner indicates that he was promised that he would serve no time in prison. The Court also notes that the affidavit of Petitioner's counsel, likewise, does not support Petitioner's claim. Counsel avers:

> "I was not privy to all conversation that was had by my client and the US Attorney, but it was my impression that because of Frank's cooperation he would not be going to jail."

*See* Exhibit VI to Petition.[4]

Petitioner agreed, by his signing of the plea agreement, that such document embodied the entire agreement between himself and the government. Paragraph 26 of the plea agreement states:

---

[4] The Court notes that the plea agreement assured Petitioner of his right to have counsel present during any questioning or interview by government agents concerning the offense of conviction.
> "The defendant's attorney is expressly permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement."

Plea Agreement, ¶19.

> "The plea agreement represents the total agreement between the defendant, FRANK MASTERANA, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant."

Plea Agreement ¶26. Below that paragraph appears the signature of the Assistant United States Attorney. Following that signature is a further acknowledgment by Petitioner:

> "I have read this agreement, which consists of 17 pages. I have had a full opportunity to discuss this agreement with my attorney, Dennis C. Gaughan, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will and in signing it, I voluntarily and freely admit those facts set forth in paragraph five (5) of this agreement.
>
> "In addition, I agree that my attorney Dennis C. Gaughan, Esq. has, at all times in this case, represented me zealously and competently, and I am entirely satisfied with the representation he has provided to me."

Plea Agreement pp. 16-17. The acknowledgment is followed by the signatures of Petitioner and his attorney.

There are numerous statements within the plea agreement that indicate that the government could not and did not guarantee that the Court would impose a specific sentence. Paragraph 1 sets forth the maximum sentence authorized by

statute for Petitioner's crime of conviction, specifically, a term of imprisonment of 5 years, a fine of $250,000, or both, a mandatory $50 special assessment and a term of supervised release of at least 2 years and up to 3 years.  Paragraph 11, which set forth the parties' understanding that Petitioner faced between 30 and 37 months of imprisonment under an application of the Guidelines, concludes with the proviso that:

> Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in paragraph 1 of this agreement."

Plea Agreement, ¶11.

It cannot be disputed that the government promised Petitioner that if he cooperated fully, the government would file a motion for downward departure on his behalf.  However, the government also stated, and Petitioner recognized, that the decision whether to grant the departure and, if granted, the extent of any departure, were matters entirely within the discretion of the Court.

> "Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines as provided in Guidelines §5K1.1. *The defendant understands that the decision to make such a motion is within the discretion of the government and the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.*"

Plea Agreement, ¶14 (emphasis added).  It further appears to the Court that the government intended that the extent of its Guidelines §5K1.1 motion would render petitioner eligible for probation.  At the plea proceeding, the government stated

> "[a]nd certainly we will review what he's done at the appropriate time and make the appropriate recommendations to this Court.  And that recommendation *could* include a recommendation for a downward departure up to a level where he indeed will be *eligible* for [probation][5]."

Plea Transcript at 9 (emphasis added).  The Court further notes that there is no evidence that the government promised to recommend a sentence of probation — which it did not — much less promise that such sentence would be imposed.[6]

Finally, Petitioner baldly claims that the Court failed to verbalize the supervised release portion of his sentence.  The Court has reviewed the recording of the sentencing and confirmed that, after stating Petitioner's term of incarceration, the Court stated on the record that Petitioner would thereafter be subject to a term of supervised release of 3 years.  *See* Recording of March 4, 2005 Sentencing at 1:33:40.

---

[5] The actual quotation from the transcript reads "eligible for cooperation," however, from the context of the statement, the Court concludes that the transcript should have read "eligible for *probation*."

[6] Even if the government had recommended a sentence of probation, the Court would have imposed the same sentence.  Petitioner's criminal history is lengthy.  His involvement in bookmaking operations stems some 50 years.  Despite his belief as to the legality of his enterprise within the Dominican Republic, the facts admitted by Petitioner establish a violation of United States law.

**CONCLUSION**

For the reasons stated, it is hereby **ORDERED** that the petition is denied. The Clerk of the Court is directed to take all steps necessary to close this case.

The Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right and therefore a certificate of appealability will not be issued. 28 U.S.C. §2253(c)(2).

The Court certifies pursuant to 28 U.S.C. §1915(a)(3), that any appeal from this judgment would not be taken in good faith, and therefore denies leave to appeal *in forma pauperis*. Further requests to proceed on appeal *in forma pauperis* must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

DATED:   Buffalo, N.Y.

February 8, 2006

>                                  */s/ John T. Elfvin*
>                                  JOHN T. ELFVIN
>                                  S.U.S.D.J.